# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-15-93-M |
| | ) | |
| DARYL LEE INGRAM, | ) | |
| MICHAEL EUGENE BANKS, and | ) | |
| MICHAEL SHANDELON BROWN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

On June 26, 2015, defendant Michael Eugene Banks ("Banks") filed a Motion for *James* Hearing and Brief in Support [docket no. 164]; on September 9, 2015, defendant Daryl Lee Ingram ("Ingram") filed a Motion for Hearing to Determine Admissibility of Coconspirator's Statements [docket no. 263], and on December 18, 2015, defendant Michael Shandelon Brown ("Brown") filed a Motion for *James* Hearing to Determine Admissibility of Extrajudicial Statements of Alleged Co-Conspirators and Brief in Support [docket no. 346]. On July 7, 2015, the government responded to Banks' motion; on September 29, 2015, the government responded to Ingram's motion, and on December 28, 2015, the government responded to Brown's motion. On January 19, 2016, the Court conducted a *James*[1] hearing in this matter.

---

[1] *United States v. James*, 590 F.2d 575 (5th Cir. 1979).

At the hearing Matthew McRorie, a Detective with the Oklahoma City Police Department[2], testified. Det. McRorie testified regarding the nature and members of the alleged conspiracy involved in this case. Det. McRorie further testified that the alleged conspiracy began on or about September 12, 2013 and continued through on or about October 31, 2015.[3] Finally, Det. McRorie testified regarding the statements that the government contends are admissible coconspirator statements.[4]

---

[2] The Court finds that Det. McRorie is a credible witness.

[3] Specifically, Det. McRorie testified that the conspiracy occurred during the time identified in the Second Superseding Indictment.

[4] The statements at issue are the following:

1. July 24, 2014 recorded jail phone call between Mr. Ingram and Mr. Banks wherein they discuss methods of evading police detection, Mr. Banks' drug - dealings with another Rollin 90s member, and whether Mr. Ingram will bond Mr. Banks out of jail;

2. July 24, 2014 recorded jail phone calls between Mr. Banks and Linda Donell Banks wherein, among other things, Mr. Banks discusses a lower - ranking Rollin 90s member assuming responsibility for drugs discovered by police, his decision to go to the house where the drugs were later found, his additional drug - dealing enterprise with another members of the Rollin 90s, receiving drugs via the mail, and having Mr. Ingram bond him out of jail; in this call, Ms. Banks tells Mr. Banks that Mr. Ingram "said he would get you but he is talking about letting you sit there a couple days because he told you not to be over there";

3. Statements made between Mr. Banks and Gabrielle Stevenson on the weekend of October 11, 2014, asking Ms. Stevenson to

take care of a deal with one of Mr. Banks's customers while Mr. Banks was out of town;

4. Statements between Ms. Stevenson and Mr. Banks made on November 29, 2014, when Oklahoma City Police Department members arrived at the Spencer Residence, including that Mr. Banks should "flush" the crack cocaine and break down the guns, and that, if he was going to put the "stuff" up in the attic, that he should "toss" it all the way to the back of the attic;

5. December 17, 2014 recorded jail phone call between Gabrielle Stevenson and Tywon Goosby (another gang member and co - conspirator), in which they are discussing "Chico" (Defendant Xavier Jorge Guerrero) and the "Black man" (Defendant Daryl Ingram) providing money to bail Defendant Stevenson out of jail;

6. Forwarded text message from Mr. Banks to Satin Sierre Watley containing account information sent to him by Mr. Guerrero. The account number belongs to Ms. Howell, Mr. Guerrero's long - time girlfriend;

7. The text messages between Shavon Howell and Mr. Guerrero discussing contact with Mr. Ingram, picking up money, bank account information, money transfers, and giving Mr. Ingram money orders to bring to Mr. Guerrero while Mr. Ingram and Mr. Brown were in California;

8. An October 11, 2014 text message to Ms. Banks' phone wherein the sender (with a telephone area code number of Missouri) provides 5025 Crenshaw Blvd., Los Angeles, California on the same day that Ms. Banks sent money orders purchased with drug proceeds to that address. 5025 Crenshaw Blvd. is Mr. Guerrero's residence;

9. A November 19, 2014 text message to Ms. Stevenson from Mr. Banks providing Mr. Guerrero's address. Shortly

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides, in pertinent part:

> (d) Statements which are not hearsay. A statement is not hearsay if –
>
> \* \* \* \*
>
> (2) Admission by party-opponent. The statement is offered against a party and is . . .
> > (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2)(E). Rule 801(d)(2)(E) allows for the admissibility of coconspirator statements only if "the trial court finds the following elements by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy." *United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir. 1997).

---

> thereafter, Ms. Stevenson mailed money orders purchased with drug proceeds to that address;
>
> 10. Statements between Ms. Stevenson and Mr. Banks regarding how Ms. Stevenson should obtain and mail money orders using proceeds from Mr. Banks's drug-trafficking enterprise;
>
> 11. Statements between Ms. Watley and Mr. Banks regarding how Ms. Watley should obtain and mail money orders using proceeds from Mr. Banks's drug -trafficking enterprise; and
>
> 12. Statements between Mr. Guerrero and Ms. Howell discussing whether Mr. Ingram could use her bank account to receive money.

Government's Notice and Summary of Anticipated Conspirators' Statements [docket no. 404] at 6-8.

"In making its preliminary factual determination as to whether a conspiracy exists, the court may consider the hearsay statement sought to be admitted, along with independent evidence tending to establish the conspiracy." *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (internal citations omitted). "[T]here need only be some independent evidence linking the defendant to the conspiracy." *Id.* (internal quotations and citations omitted). "Such independent evidence may be sufficient even when it is not 'substantial.'" *Id.* (internal citation omitted). Independent evidence has been defined as evidence other than the proffered coconspirator statements themselves. *Id.*

"No talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy . . . . To the contrary, this determination must be made by examining the context in which the challenged statement was made." *United States v. Perez*, 989 F.2d 1574, 1578-79 (10th Cir. 1993) (internal citations omitted). "In general, mere narratives, between coconspirators or narrative declarations of past events are not 'in furtherance,' while statements of future intent that set transactions integral to the conspiracy in motion and maintain the information flow among coconspirators meet the 'in furtherance' requirement." *United States v. Roberts*, 14 F.3d 502, 514-15 (10th Cir. 1993). Statements identifying other members of the conspiracy, statements describing their roles in the conspiracy, statements discussing the particular roles of other coconspirators, statements made to induce enlistment or further

5

participation in the group's activities, statements made to prompt further action on the part of the conspirators, statements made to reassure members of a conspiracy's continued existence, statements designed to allay the fears and suspicions of another coconspirator, and statements made to keep coconspirators abreast of an ongoing conspiracy's activities are all "in furtherance of" the conspiracy. *See United States v. Owens*, 70 F.3d 1118, 1125 (10th Cir. 1995); *United States v. Williamson*, 53 F.3d 1500, 1520 (10th Cir. 1995); *Roberts*, 14 F.3d at 515; *Perez*, 989 F.2d at 1578.

Having heard the evidence and argument presented at the *James* hearing, the Court finds that the statements in question are admissible under Rule 801(d)(2)(E). Specifically, the Court finds that the government did prove by a preponderance of the evidence that a conspiracy existed and that the conspiracy began on or about September 12, 2013 and continued through October 31, 2015. The Court further finds that the government proved by a preponderance of the evidence that Ingram, Banks, and Brown were members of the conspiracy. Finally, the Court finds that the government proved by a preponderance of the evidence that the statements at issue were made in the course of and in furtherance of the conspiracy.

**IT IS SO ORDERED this 12th day of April, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE